**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **1. JEFFERY TREVILLION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **1. STANLEY GLANZ, Sheriff of Tulsa** | ) | |
| **County, Oklahoma, individually, and** | ) | |
| **in his official capacity,** | ) | |
| | ) | **Case No. 12-CV-146-JHP-TLW** |
| **2. CORRECTIONAL HEALTHCARE** | ) | |
| **MANAGEMENT OF OKLAHOMA,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **3. MICHAEL LAHITA** | ) | |
| | ) | |
| **4. MONIMARIE BLACK** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**OPINION AND ORDER**</u>

Before the Court are Defendant Stanley Glanz's Motion to Dismiss Complaint,[1] Plaintiff's Response to Defendant Stanley Glanz's Motion to Dismiss Complaint,[2] Reply in Support of Stanley Glanz's Motion to Dismiss Complaint,[3] Motion to Dismiss Plaintiff's Petition by Defendant Correctional Healthcare Management of Oklahoma, Inc.,[4] and Plaintiff's Response to Defendant Correctional Healthcare Management of Oklahoma, Inc.'s Motion to Dismiss.[5] For the reasons cited

---

[1]Docket No. 5.

[2]Docket No. 6.

[3]Docket No. 9.

[4]Docket No.12.

[5]Docket No. 14.

1

below, both Defendants' Motions are **GRANTED IN PART, DENIED IN PART**, consistent with

this Opinion and Order.

## BACKGROUND

### A. Relevant Facts

The instant case arises from events occurring while Plaintiff was incarcerated at the David

L. Moss Criminal Justice Center between February 23, 2010 and September 8, 2010.[6] Plaintiff

suffers from diabetes, requires insulin shots twice a day, and cannot walk more than a short distance

without a wheelchair.[7]  He alleges he was placed in a one-person, handicap-accessible cell partially

under the supervision of Correctional Healthcare management of Oklahoma, Inc. (CHMO)

employees, as well as Defendants Michael Lahita (Lahita) and Monimarie Black (Black), both jail

employees.[8]  Due to overcrowding, "Defendants placed two other inmates in the Plaintiff's one

person cell," so that Plaintiff was "unable to use his restroom when needing to [sic]."[9]

Plaintiff alleges that he and his physician notified CHMO employees that Plaintiff needed

a wheelchair to move around the facility, but all Defendants contributed to a failure to provide the

wheelchair in a timely manner.[10]  Specifically, Plaintiff documents an episode involving Defendants

Black and Lahita.  Plaintiff alleges that Defendant Black removed the wheelchair from Plaintiff's

---

[6]Petition at 1, Docket No. 12-1.

[7]*Id.* at 5, ¶ 17-19.

[8]*Id.* at 4-5, ¶ 15.

[9]*Id.* at 5, ¶ 16.

[10]*Id.* at 1, ¶ 2.

cell, stating there was no room for it with the two additional inmates.[11]  Plaintiff alleges at least one

occasion, April 18, 2010, when Defendant Black refused to provide the wheelchair when Plaintiff

needed to visit the jail's medical section for his insulin shot.[12]  Plaintiff held onto a railing in the

hallway for balance and could not move further without his wheelchair.[13]  While he stood in the

hallway, Defendant Lahita accused him of loitering, tried to force him to move, and finally

performed a leg sweep, knocking Plaintiff to the floor.[14]  Because of his paralysis, Plaintiff was

allegedly unable to block his face from hitting the hard floor.[15]  In addition, Plaintiff filed a

grievance after this episode but did not receive a response.[16]

## B. Relevant Procedural History

On February 1, 2012, Plaintiff filed a Petition in Tulsa County District Court against Tulsa

County Sheriff Stanley Glanz (Glanz), CHMO, Lahita, and Black alleging constitutional

deprivations pursuant to 42 U.S.C. §1983 ("§1983").[17]  The case was removed to this Court by

Defendants on April 26, 2012.[18] Plaintiff seeks redress against Defendant Glanz both in his official

---

[11]*Id.* at 5, ¶ 18.

[12]*Id.* at 5, ¶ 19. Plaintiff seemingly implies this happened more than once. *See id.* at 5, ¶18 ("Sergeant Black refused to get the wheelchair for the Plaintiff when he needed to present to medical for his insulin *shots*").

[13]*Id.*

[14]*Id.* at 5-6, ¶ 19.

[15]*Id.* at 6, ¶ 19.

[16]*Id.* at 6, ¶ 20.

[17]*Id.* at 1, 9.

[18]*See* Docket No.12.

capacity and in his individual capacity under a theory of "supervisor liability."[19] Plaintiff seeks

redress against CHMO under a theory of municipal liability, and against Officers Black and Lahita

in their individual capacities.[20]  In his prayer for relief, Plaintiff seeks monetary damages against all

Defendants in excess of $75,000 with interest accruing from the date of filing, punitive damages

against all Defendants in excess of $75,000, and reasonable attorney fees.[21]

On April 11, 2012, Defendant Glanz moved to dismiss Plaintiff's Petition for failure to state

a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[22] Defendant Glanz specifically cited

that Plaintiff's Petition failed to allege a sufficiently serious constitutional deprivation and failed to

plead a custom or policy sufficient to sustain official capacity or supervisory liability claims.[23] On

April 26, 2012, Defendant CHMO filed its Motion to Dismiss Plaintiff's Petition citing failure to

make specific factual allegations against it pursuant to Federal Rule of Civil Procedure 8(a) and

failure to state a claim pursuant to Rule 12(b)(6).[24] Both Motions are fully briefed and at issue.[25]

---

[19]Petition at 3, ¶9; 10.

[20]*Id.* at 4,12.

[21]*Id.* at 14.

[22]Docket No. 5.

[23]*Id.* at 5, 9.

[24]CHMO Motion at 12, 15, Docket No. 12.

[25]The Court notes Defendant CHMO did not file a Reply to Plaintiff's Response to its Motion to Dismiss. As such, the Court deems that Reply waived. *See* L.Civ.R. 7.2(h).

## DISCUSSION

To survive the Defendants' Motion to Dismiss pursuant to 12(b)(6), Plaintiff's Petition must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[26] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."[27] This standard *does not* require heightened fact pleading or that a plaintiff establish a *prima facie* case in his Complaint, merely that the facts alleged nudge a plaintiff's claims across the line from conceivable to plausible.[28]

A claim has facial plausibility when the pleaded facts, accepted as true, allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[29] Plausibility is not a watchword for probability. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."[30] Ultimately, Federal Rule of Civil Procedure 8 requires only that the Petition or Complaint give the defendant fair notice of the substance of plaintiff's claim and the grounds upon which it rests."[31]

---

[26]*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[27]*Iqbal*, 556 U.S. at 678.

[28]*See Khalik v. United Air Lines*, 671 F.3d 1188, 1191-92 (10th Cir.2012)

[29]*Jordan–Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir.2011).

[30]*See Twombly*, 550 U.S. at 556 (*internal quotation omitted*).

[31]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (*internal quotation ommitted*).

All of Plaintiff's claims allege violations of the Eighth Amendment prohibition against cruel and unusual punishment, applicable to Defendants through the Fourteenth Amendment.[32]   Although Plaintiff's Complaint lacks perfect organization, the Court can easily glean three distinct, alleged deprivations from the factual allegations presented in Plaintiff's Petition: (1) Plaintiff was subjected to overcrowded conditions which deprived him of life's necessities including housing appropriate for his handicap and the regular use of his cell's toilet; (2) Plaintiff's prescribed medical treatment, *i.e.*, his wheelchair, was interfered with, ultimately resulting in injury; and (3) Plaintiff was subjected to excessive force by prison employees. As the deprivations complained of are relatively clear, the Court examines the facts pled as they relate to the moving Defendants in order to determine if any relief against those parties is plausible.

**A. Overcrowding/Inadequate Housing**

Plaintiff's first allegation concerns jail overcrowding which led to alleged deprivations including the constructive denial of a handicap accessible cell and Plaintiff's inability to use the cell toilet.[33] The court notes from the outset that the Constitution does not mandate comfortable prisons.[34]  An Eighth Amendment challenge to prison conditions must contain facts showing both (1) that the

---

[32]Petition at 9, Doc. No. 12-1. Plaintiff's Petition is unclear whether Plaintiff was a prisoner or pretrial detainee for the length of his stay at David L. Moss. However, such a distinction is inconsequential at this juncture. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir.2002) ("Although pretrial detainees are protected under the Due Process Clause rather than the Eighth Amendment, . . . this Court applies an analysis identical to that applied in Eighth Amendment cases brought pursuant to § 1983") (*internal quotations omitted*).

[33]The Court assumes Plaintiff alleges a constructive denial of a handicap-accessible cell based on overcrowding as Plaintiff plainly admits that he was placed in a single-person, handicap-accessible cell. *See* Petition at 4, ¶15, Docket No. 12-1.

[34]*See Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

conditions resulted in a "sufficiently serious" deprivation, that is, the conditions deprived the inmate of "the minimal civilized measure of life's necessities"; and (2) that the responsible officials acted with deliberate indifference to the prisoner's conditions.[35]

Applying this analysis, the Court first looks to the alleged deprivation to determine if it is "sufficiently serious." Plaintiff alleges:

> Due to over crowding in the jail, Defendants placed two other inmates in the Plaintiff's one person cell. One inmate slept in the Plaintiff's shower and another slept on the floor of the cell. This caused the Plaintiff to be unable to use his restroom when needing to.[36]

> After the additional inmates were placed in Plaintiff's cell, Sergeant Black removed the Plaintiff's wheelchair from the room, informing him there was no space for it. Sergeant Black refused to get the wheelchair for the Plaintiff when he needed to present to medical for his insulin shots.[37]

> The absence of guidelines regarding the housing and supervision of disabled inmates and the failure to train and supervise has manifested itself in a pattern and practice of failures to: . . . provide appropriate and separate housing for inmates in need of medical assistance and handicapped inmates.[38]

Taken as true, and in a light most favorable to Plaintiff, the allegation that Plaintiff was denied handicap-accessible accommodations, including accessible bathroom facilities, may indicate a deprivation of "the minimal civilized measure of life's necessities." Problematic, however, is the fact that nothing in Plaintiff's Petition indicates the length of time Plaintiff was subjected to these conditions. The length of time a prisoner is subjected to overcrowded conditions is often an essential element to pleading a "sufficiently serious" deprivation based on jail conditions, as subjecting a

---

[35]*Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10thCir.1998).

[36]Petition at 5, ¶16, Docket No. 12-1.

[37]*Id.* at ¶18.

[38]*Id.* at 7, ¶25.

prisoner to overcrowded conditions for a few days may not rise to a constitutional deprivation, but subjecting him to the same conditions over a period of weeks or months may result in constitutional harm.[39]

Although Plaintiff was incarcerated a number of months, it is clear from Plaintiff's Petition that the alleged unconstitutional conditions did not span this entire period. In fact, Plaintiff's Petition explicitly pleads that he was originally given a single-occupancy, handicap-accessible cell and suggests that he was not subjected to the overcrowding for the entirety of his incarceration.[40] From the facts alleged, it is impossible to determine whether the overcrowded conditions, and any attendant deprivation, lasted for one day or several months. Even accepting all of Plaintiff's allegations as true, without some factual allegation indicating that Plaintiff was subjected to these conditions for an appreciable amount of time, Plaintiff's claim with respect to overcrowding does not allege a "sufficiently serious" deprivation for which §1983 relief is plausible.[41]

**B. Interference with Prescribed Medical Treatment**

---

[39]*See Bell v. Wolfish,* 441 U.S. 520, 542, 99 S.Ct. 1861, 60 L.Ed.2d 447 (Causing pretrial detainees to "endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment"); *Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 2571, 57 L.Ed.2d 522 (1978)("A filthy, overcrowded cell and diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months").

[40]*Id.* at 4, ¶15; 5, ¶16 (noting that Plaintiff "was housed in a one person handicapped cell" and that at some point Plaintiff had his wheelchair in his cell, but it was later removed to make room for more inmates).

[41]Plaintiff's Petition further fails to clearly state who was allegedly responsible for the alleged overcrowding. *See* Petition at 5, ¶16, Docket No. 12-1 ("Defendants placed two other inmates in the Plaintiff's one person cell"). Although this issue is somewhat clarified elsewhere in the Petition, *see id.* at 3, ¶9; 6, ¶24, this loose language typifies the imprecise allegations throughout Plaintiff's Petition.

Plaintiff's second alleged deprivation arises from Officer Black's failure to retrieve Plaintiff's wheelchair and Black subsequently forcing Plaintiff to walk unassisted to the medical section to receive his insulin shot.[42] In pursuing a claim for interference or inadequate treatment, Plaintiff must first offer allegations supporting the contention that the interference with medical care alleged amounted to a constitutional deprivation. To do so, Plaintiff must offer facts, taken as true, that tend to show (1) that he presented a serious medical need *and* (2) that acts or omissions by jail officials indicate there was a deliberate indifference to that need.[43] A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."[44] Multiple circuits have specifically held that failure to provide a wheelchair for an inmate may constitute deliberate indifference to a serious medical need in violation of the Eighth Amendment.[45]

Here, Plaintiff fairly alleges that a doctor had prescribed the wheelchair because Plaintiff could not easily walk after suffering a stroke, thus indicating that Plaintiff had a sufficiently serious medical need for the wheelchair in question.[46] Plaintiff further implies that Defendant Black knew

---

[42]*Id.* at 5, ¶¶18-19.

[43]*See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir.2006) ("[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs") (*citing Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

[44]*Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10thCir.1999) (*quoting Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir.1980)).

[45]*See, e.g., Shakka v. Smith*, 71 F.3d 162, 166-67 (4thCir.1995) (*citing Weeks v. Chaboudy*, 984 F.2d 185, 187-88 (6th Cir.1993); *Cummings v. Roberts,* 628 F.2d 1065, 1068 (8th Cir.1980).

[46]Petition at 1, ¶2, Docket No. 12-1 ("Plaintiff and his physician notified jail personnel and medical personal employed by [CHMO] of his need for a wheelchair to move around the facility").

that Plaintiff's wheelchair was a doctor prescribed treatment yet was deliberately indifferent to Plaintiff's demonstrated serious medical need.[47] Finally, Plaintiff alleges this forced walking caused him undue hardship.[48] Taken as true and in a light most favorable to the Plaintiff, these allegations are sufficient to support a plausible claim of deliberate indifference against Defendant Black. However, to obtain relief from Defendant Glanz or CHMO, Plaintiff must allege more than that Defendant Black was deliberately indifferent to Plaintiff's serious medical need, Plaintiff must allege that Defendant Black's actions were in conformance with some custom or policy promulgated, implemented, or enforced by Glanz and/or CHMO; or that the existing policies in force were inadequate to prevent the complained of harm.[49]

Therefore, whether relief is sought from Glanz in his official capacity or against CHMO, to support a plausible claim for interference with medical care against these parties, Plaintiff must allege: (1) facts supporting the existence of an official policy or custom of Glanz and/or CHMO and (2) facts supporting an affirmative or direct causal link between the municipal "person's" adoption or implementation of that policy or custom and the alleged deprivation of his constitutional rights.[50] Where, as here, a plaintiff asserts the alleged custom or policy comprised a failure to act, he or she must also demonstrate the inaction resulted from deliberate indifference to the rights of those like

---

[47]*Id.* at 5, ¶¶18-19 (stating Plaintiff told Black he needed his wheelchair).

[48]*Id.* at 5, ¶19.

[49]*Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir.1996).

[50]*See Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)  (noting official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent); *Smedley v. Corrections Corp. of America,* 175 Fed.Appx. 943, 946 (10th Cir.2005) ("[I]t is now well settled that *Monell* also extends to private defendants sued under § 1983") (*citing Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1216 (10th Cir.2003)).

the plaintiff.[51]  A similar standard applies to Plaintiff's "supervisor liability" claims against Sheriff Glanz in his individual capacity.[52]

In support of his claims against Glanz and CHMO, Plaintiff cites that the actions of Defendant Black and the failure to have the wheelchair available were the result of the shared policies of Defendant Glanz and CHMO.[53] Plaintiff specifically cites that CHMO's medical communications policy delayed his receipt of his wheelchair "until it was too late."[54] Plaintiff also alleges that Officer Black's actions were the result of a general failure to train or supervise jail employees with regard to the needs of disabled inmates by Defendant Glanz.[55]

Plaintiff contends that all of these policies contributed to the situation that ultimately forced him to walk unassisted to the jail medical facility. Plaintiff further alleges that both Glanz and CHMO were on notice that existing jail policies and employee training was generally inadequate to meet the needs of disabled inmates, as this problem was brought to their attention by former employee Pamela Hoisington.[56] Plaintiff contends that Hoisington's reports provided actual notice

---

[51]*Jenkins*, 81 F.3d at 994.

[52]*Dodds v. Richardson*, 614 F.3d 1185, 1201 (10th Cir.2010) (holding supervisory liability is properly imposed "upon individual defendants who act with the requisite degree of culpability to promulgate, create, implement, or otherwise possess responsibility for the continued operation of policies that cause the deprivation of persons' federally protected rights").

[53]*Id.*

[54]*Id.* at ¶26 ("In light of Plaintiff's report of serious issues, including the failure of Defendants to provide him with a wheelchair, Plaintiff's request for treatment should have been treated as an emergency. Instead the inadequate communications policy in place at the Tulsa County Jail predictably delayed any response until it was too late").

[55]*Id* at 10, ¶39; 12, ¶48.

[56]Petition at 8, ¶ 29.

to Glanz and CHMO that failure to remedy the cited policy and training issues was substantially certain to result in constitutional violations against disabled people like the Plaintiff.[57] Plaintiff further offers that, in spite of this notice, both Defendant Glanz and Defendant CHMO consciously chose to disregard that risk by continuing to use existing policies and training procedures.[58]

Taken as true, and in a light most favorable to the Plaintiff, these allegations support a reasonable inference as to the existence of infirm or inadequate policies and that the policies or lack thereof affirmatively caused the complained of deprivation. Further, Plaintiff's allegation that Defendants Glanz and CHMO failed to act on Hoisington's reports is sufficient to support a reasonable inference of deliberate indifference by the decisionmakers. Although the ultimate viability of Plaintiff's claim will require further factual development, it is inappropriate at this juncture to dismiss Plaintiff's claim for interference with medical treatment as to either Defendant Glanz or Defendant CHMO.

## C. Excessive Force/ Failure to Train or Supervise

Plaintiff's final alleged deprivation is premised upon the leg sweep executed by Officer Lahita on the handicapped Plaintiff. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment.[59] When a prison official is accused of using excessive force in violation of the Eighth Amendment, the Court must decide "whether the force was applied in a good-faith effort to maintain or restore discipline or maliciously and

---

[57]*Id.*

[58]*Id.* (noting Defendant Glanz has refused to reform policies; relaying the facts surrounding the reporting by Hoisington and her subsequent firing by CHMO at the direction of Defendant Glanz).

[59]*Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

sadistically to cause harm."[60] Relevant to that determination is the need for the application of force, the relationship between the need for force and the amount of force that was used, and the extent of the injury inflicted.[61]  From these factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."[62]

Here Plaintiff's allegation, that Officer Lahita violently took the handicapped Plaintiff to the ground as he was merely leaning on a wall unable to walk any further, certainly supports a reasonable inference that Defendant Lahita's assault was not intended to restore order, but to unnecessarily inflict pain. However, to impose liability on either Defendant's Glanz or CHMO, Plaintiff must allege facts tying Lahita's actions to some custom or policy.[63] Plaintiff does not do so.

Plaintiff's Petition generally focuses on the imprecisely identified "Defendants'"deliberate indifference to Plaintiff's medical needs.[64] Nowhere does it suggest any policy or custom by Sheriff Glanz condoning or ignoring excessive force, whether against handicapped or able-bodied inmates. Although Plaintiff's Petition broadly references a failure to train or supervise, Plaintiff offers no factual allegations supporting an inference that the need for different training with regard to excessive force was "so obvious, and the inadequacy so likely to result in the violation of

---

[60]*Hudson v. McMillan*, 503 U.S. 1, 6, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

[61]*Whitley*, 475 U.S.  at 321.

[62]*Id.*

[63]*Jenkins*, 81 F.3d at 994.

[64]*See, e.g.,*  Petition at 10, ¶38; 11, ¶41.

constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need for additional training."[65] Without specific allegations with regard to excessive force and Defendant Glanz's deliberate indifference to it, Plaintiff does not state a plausible claim for excessive force against Defendant Glanz in either his individual or official capacities, and any such claim is properly dismissed.

Further, Plaintiff does not allege any facts supporting that Defendant CHMO, a company responsible for jail medical facilities and personnel, was in any way responsible for the training or supervision of Defendant Lahita. In fact, Plaintiff's Response to CHMO's Motion to Dismiss reflects that no such claim was intended.[66] Consequently, any claim of excessive force against CHMO is also dismissed.

**D. Punitive Damages as to Defendant Glanz**

Defendant Glanz seeks dismissal of any punitive damages claim against him in his official capacity.[67]  As Defendant Glanz notes, punitive damages are not recoverable against an officer in his official capacity.[68] In his Response, Plaintiff argues that punitive damages are available against

---

[65]*Jenkins*, 81 F.3d at 994 (*internal quotations omitted*).

[66]Plaintiff's Response to CHMO's Motion at 11, Docket No. 14 ("Plaintiff has alleged facts that, if taken as true, demonstrate that CHMO violated Plaintiff's clearly established rights in failing to provide Plaintiff with the necessary and requested medical accommodations and in failing to maintain adequate and separate housing for him as a disabled inmate").

[67]Plaintiff's Response to Glanz's Motion to Dismiss at 9, Doc. No. 6.

[68]Glanz's Motion to Dismiss at 11, Doc. No. 5); *see also Nelson v. Glanz*, 2011 WL 2144660, at *6 ("While plaintiff may not recover punitive damages against Glanz in his official capacity, her demand for punitive damages against Glanz in his individual capacity is not barred as a matter of law").

defendants in their official capacity, citing *Youren v. Tintic School Dist.*[69] The *Youren* court specifically stated that "The fact that municipalities are immune from punitive damages does not, however, mean that individual officials sued in their official capacity are likewise immune."[70] Although this language indicates some punitive award may be available in official capacity suits, it cites to no authority and runs counter to long-established Supreme Court precedent.

The Supreme Court has plainly stated that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and that punitive damages are not available against government entities.[71] Even other district courts in the Tenth Circuit have specifically declined to follow *Youren* on this point.[72] Consequently, Plaintiff's citation to *Youren* is unpersuasive, and any claim for punitive damages against Defendant Glanz in his official capacity is properly dismissed.

This should in no way be construed as a ruling as to punitive damages against Defendant Glanz in his individual capacity. Punitive damages can be awarded when a factfinder determines that a defendant was motivated by evil motive or intent, or when a defendant has demonstrated reckless or callous indifference to the federally protected rights of others.[73] The callous indifference state

---

[69]343 F.3d 1296 (10th Cir. 2003).

[70]*Id.* at 1307.

[71]*Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *City of Newport v. Fact Concerts, Inc.* 433 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).

[72]*Cf. Riggs v. City of Owensville,* 2010 WL 2681384, at *2-3 (E.D. Mo. 2010) ("[*Youren*] is not supported by reasoning or citation to authority and does not appear to have been followed even within the Tenth Circuit.") (*citing Fernandez v. Taos Municipal Schools Bd. of Educ.,* 403 F. Supp. 2d 1040, 1043 (D. N.M. 2005).

[73]*Smith v. Wade*, 461 U.S. 30, 56 (1983); *Jolivet v. Deland*, 966 F.2d 573, 577 (10th Cir. 1992).

15

of mind required for punitive damages is essentially the same as the deliberate indifference required to impose individual liability on Defendant Glanz under § 1983.[74] As Plaintiff has alleged sufficient facts to support a claim of deliberate indifference on the part of Defendant Glanz, Plaintiff has pled facts sufficient to sustain a claim for punitive damages against Defendant Glanz individually.

<u>**CONCLUSION**</u>

Although Plaintiff's Petition is in many instances unclear as to which allegations are leveled against which Defendants, read in its entirety, Plaintiff's Petition contains enough information to provide Defendants Glanz and CHMO notice of at least some plausible claims against them. Consequently, both Defendant Stanley Glanz's Motion to Dismiss Complaint,[75] and the Motion to Dismiss Plaintiff's Petition by Defendant Correctional Healthcare Management of Oklahoma, Inc.[76] are **GRANTED IN PART, DENIED IN PART**, consistent with this Opinion and Order.

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[74]*See Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987); *Newman v. State of Alabama*, 503 F.2d 1320, 1332 (5th Cir. 1974).

[75]Docket No. 5.

[76]Docket No.12.

16