# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEFFERY TREVILLION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-CV-146-JED-TLW |
| | ) |
| STANLEY GLANZ, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Court has for its consideration defendant Stanley Glanz's Motion for Summary Judgment and Brief in Support (Doc. 77). Sheriff Glanz seeks summary judgment as to plaintiff Jeffery Trevillion's sole Eighth Amendment claim for cruel and unusual punishment brought pursuant to 42 U.S.C. § 1983. Trevillion's Eighth Amendment claim is based upon the injuries he is alleged to have suffered as a result of the defendants' denial of his access to a wheelchair.

### BACKGROUND

On February 22, 2010, Trevillion was arrested and booked into the David L. Moss Criminal Justice Center (the "Tulsa County Jail" or "Jail"). During the booking process, Trevillion underwent a medical screening, which included the completion of a form regarding his medical history. He indicated on the form that he was in need of blood pressure medicine and insulin due to his diabetes. During the intake screening, Trevillion did not report that he was disabled and the medical screening form he completed does not reflect his need for a wheelchair.[1] Nevertheless, Trevillion was given a "handicap cell" and assigned a wheelchair by

---

[1] The medical screening form contains a "mobility" section where a box can be checked for the use of a wheelchair. The form completed by Trevillion has a box checked indicating a "limp", but the wheelchair option is not checked. This section appears to be one which is filled out by

the intake nurse on the day of his booking. He was told by the intake nurse that he was not legally entitled to the wheelchair until a doctor evaluated him and recommended that he be provided a wheelchair.

> The Tulsa County Sheriff's Office ("TCSO") has a policy that provides:
>
> Inmates who use a wheelchair, crutches or a prosthetic device will be allowed to use the device, when apparent to the search officer that the device is necessary, or upon confirmation from the medical staff that the inmate is in fact in need of the device. Questionable medical devices should be checked with the medical staff. If the medical staff does not confirm the inmate's need for the device, detention officers may remove the equipment.

(Doc. 89-1, at 12). Trevillion had access to a wheelchair for the vast majority of his time in the Jail during the months of February, March, and April of 2010. Trevillion has identified three occasions when his wheelchair was taken from him by Sergeant Monyamarie Black ("Sergeant Black") and other unidentified detention staff. According to Trevillion, these three periods during which his wheelchair was removed lasted anywhere from a single day to a week. During these removals, Trevillion would still make a daily visit to the medical unit to have his blood sugar tested, but to do so, he would have to walk very slowly while holding onto a rail along the wall. Trevillion alleges no injuries associated with these three removals of his wheelchair, and a doctor had found that he was medically entitled to one at the time of these removals.

Trevillion was not evaluated by a doctor until he filed a written grievance on April 6, 2010. His grievance stated that he was a stroke victim with high blood pressure and limited mobility and recounted the fact that Sergeant Black had taken his wheelchair away. On April 7, 2010, Trevillion was examined by Dr. Andrew Adusei for the first time. Dr. Adusei determined that Trevillion had serious weakness resulting from his prior stroke and that, based upon the

---

medical staff; however, Trevillion's signature on the form appears directly below this section of the form.

motor grading assessment performed on Trevillion, he could not move against any level of resistance. As a result, Dr. Adusei determined that Trevillion was a fall risk and ordered that he receive a wheelchair. Dr. Adusei's order for the wheelchair was sent to the classifications officer to be entered on Trevillion's classification screen. While it is not entirely clear from the record, the classification system appears to be a computer program where information about particular inmates is entered and thereby made available to other jail staff that check the inmate's "screen." Detention Officer Andrew Esparza entered the information regarding Trevillion into the classification system. Trevillion was also provided with a wristband stating that he was a fall risk.

That same day, Sergeant Black spoke with Nurse Pam Hoisington regarding Trevillion's mobility. Nurse Hoisington informed Sergeant Black that Trevillion was able to walk and that, in fact, it would be good for him to do so. Sergeant Black did not see the wheelchair order that had been entered into Trevillion's classification screen, nor did she otherwise learn of Dr. Adusei's wheelchair order from the medical staff.

Trevillion did not receive a wheelchair on April 7. On April 12, 2010, Trevillion was again assessed by Dr. Adusei and was again prescribed a wheelchair. Dr. Adusei's notes strongly suggest exasperation with the fact that Trevillion still did not have a wheelchair. (Doc. 83-11 ("Where is the wheelchair???")). Yet again, on April 16, 2010, Dr. Adusei ordered that plaintiff receive a wheelchair as a medical necessity. While the details are not presented in the record, at some point between the April 16 assessment by Dr. Adusei and April 18, Trevillion came into possession of a wheelchair.

The events of April 18, 2010 are the most significant with respect to Trevillion's claims. On that date, Trevillion states that Sergeant Black came to his cell and took his wheelchair, told

Trevillion that he did not need it, that she had been advised that he should be walking, and that his cell did not have room for the wheelchair. She returned that afternoon, ordering Trevillion to make the trip to the medical unit, which Trevillion estimated to be approximately 150 yards from his cell, on foot. Trevillion told Sergeant Black that he could not go to the medical unit because she had taken his wheelchair. Sergeant Black then summoned two unidentified detention officers and told Trevillion that he would be pepper sprayed if he would not walk to the medical unit. Trevillion relented, and the two detention officers carried him into the hallway, placing him by the railing on the wall so that he could hold onto it as he crept along.

Trevillion proceeded to walk slowly down the hallway. At some point, Trevillion stopped in the hallway to rest. He was approached by Detention Officer Michael Lahita ("DO Lahita"), who instructed Trevillion that he was loitering and needed to keep moving. Trevillion responded that he could not continue. The events that followed are the subject of some dispute with respect to specific details, however it is undisputed that the altercation between Trevillion and DO Lahita became physical. According to James Sutter, an inmate who observed the altercation, DO Lahita attempted to physically force Trevillion to continue walking and Trevillion resisted. DO Lahita then proceeded to "take [Trevillion] down to the ground." (Doc. 83-2, at 13).[2] DO Lahita described the move performed as a "leg sweep, which is a balance

---

[2] Trevillion attempts to muddle the summary judgment record by citing an internal memorandum stating that Trevillion "lost his balance and fell." (Doc. 83-18). This, however, does not create a dispute of fact as to *why* Trevillion lost his balance and fell. Both DO Lahita and Inmate Sutter testified that DO Lahita employed physical force to bring Trevillion to the ground. Trevillion has not put forth any testimony, including his own, that would suggest he fell simply as a result of his physical weakness. Indeed, Trevillion initially pursued an excessive force claim as a result of DO Lahita's actions. That claim was dismissed by the Court. (Doc. 36). Trevillion's state court petition (Doc. 2-1) alleges that DO Lahita acted with excessive force when he "performed a leg sweep." (*Id.*, at 5). This is significant, as the only harm alleged by Trevillion that remains at issue in this lawsuit is that suffered as a result of his altercation with DO Lahita.

displacement technique used to subdue inmates." (Doc. 89-3). Trevillion states that this caused him to strike his head on the concrete floor, knocking him unconscious and breaking or chipping his teeth.

Two days after this incident, Trevillion was examined by Dr. Adusei, who noted severe weakness and numbness. Trevillion was sent to a hospital where it was determined that he suffered a "closed head injury." (Doc. 83-20). Trevillion states that he continues to suffer from migraine headaches, broken teeth, and nerve damage in his face as a result of this injury.

On February 1, 2012, Trevillion brought suit in Tulsa County District Court, alleging claims under the Eighth Amendment. As was noted in the Court's Opinion and Order dismissing part of Trevillion's claims, his claims were based upon three theories:

> (1) Plaintiff was subjected to overcrowded conditions which deprived him of life's necessities including housing appropriate for his handicap and the regular use of his cell's toilet; (2) Plaintiff's prescribed medical treatment, i.e., his wheelchair, was interfered with, ultimately resulting in injury; and (3) Plaintiff was subjected to excessive force by prison employees.

(Doc. 36, at 6). The Court dismissed Trevillion's claims based upon overcrowding and excessive force, leaving only his claim based upon the denial of his wheelchair. Trevillion's lawsuit named Sheriff Glanz, Correctional Healthcare Management of Oklahoma, Inc. ("CHMO"), Sergeant Black, and DO Lahita as defendants (*id*.). DO Lahita and Sergeant Black were dismissed without prejudice by Trevillion (Doc. 35), and CHMO was dismissed with prejudice by joint stipulation (Doc. 65) following a settlement conference (*see* Doc. 62). Trevillion's sole remaining claim is against Sheriff Glanz, who now seeks summary judgment (Doc. 77).

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52. The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted). When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In its review, the Court construes the record in the light most favorable to the

party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998). The Supreme Court has recently emphasized the importance of drawing inferences in favor of the nonmovant in cases raising qualified immunity and cautioned that "courts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## DISCUSSION

Sheriff Glanz seeks summary judgment on the basis that (1) there was no underlying constitutional violation by a subordinate officer which would result in liability for Glanz in his individual or official capacity and (2) Trevillion's individual and official capacity claims fail because Trevillion cannot establish deliberate indifference as to Sheriff Glanz. The Court finds Sheriff Glanz's first argument to be dispositive.

Sheriff Glanz argues that Trevillion cannot demonstrate that the removal and deprivation of his wheelchair by prison staff was done with deliberate indifference—the requisite mental state for demonstrating an Eighth Amendment violation. Trevillion argues that Sergeant Black had sufficient knowledge of the risk posed by removal of Trevillion's wheelchair to establish deliberate indifference on her part.

As an initial matter, Sheriff Glanz is correct that, in order for him to be liable in his individual or official capacity, there must be a constitutional violation by a subordinate officer. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (supervisory liability requires a constitutional deprivation); *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1317–18 (10th Cir. 2002)) ("A county or sheriff in his official capacity cannot be held 'liable for constitutional violations when there was no underlying constitutional violation by any of its officers.'").

As to the underlying constitutional violation, Trevillion must prove two essential elements: that a right secured by the Constitution or laws of the United States was violated and that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *McCarty v. Gilchrist*, 646 F.3d 1281, 1285 (10th Cir. 2011). Trevillion asserts a claim under the Eighth Amendment, which "imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). A violation of the duty imposed by the Eighth Amendment gives rise to a civil rights claim under § 1983. *See id.*

A claim such as Trevillion's is judged against the deliberate-indifference-to-serious-medical-needs test which originated in *Estelle v. Gamble*, 429 U.S. 97 (1976). *See Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). In *Estelle*, the Court was careful to note that "an inadvertent failure to provide adequate medical care" does not give rise to an Eighth Amendment violation. *Estelle*, 429 U.S. at 105–06. Thus, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106.

Deliberate indifference has objective and subjective components. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006). "The objective component of the test is met if the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause." *Callahan*, 471 F.3d at 1159 (internal quotations and citations omitted). As to the subjective component, deliberate indifference requires more than negligence or even gross negligence; it requires knowing and disregarding an excessive risk to inmate health or safety. *Id.*; *Estelle*, 429

U.S. at 104-05. Stated differently, it is a subjective standard, "requiring that the official actually be 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Tafoya*, 516 F.3d at 916 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "An official's failure to alleviate a significant risk of which he was unaware, no matter how obvious the risk or how gross his negligence in failing to perceive it, is not an infliction of punishment and therefore not a constitutional violation." *Id.*

"Because it is difficult, if not impossible, to prove another person's actual state of mind, whether an official had knowledge may be inferred from circumstantial evidence." *DeSpain v. Uphoff*, 264 F.3d 965, 975 (10th Cir. 2001); *Tafoya*, 516 F.3d at 916 ("a jury is permitted to infer that a prison official had actual knowledge of the constitutionally infirm condition based solely on circumstantial evidence, such as the obviousness of the condition."). The Tenth Circuit has noted that "in some cases" the trier of fact may conclude that an official knew of a substantial risk "from the very fact that the risk was obvious." *DeSpain*, 264 F.3d at 975 (quoting *Farmer*, 511 U.S. at 842).

In addition to deliberate indifference, Trevillion must also prove causation. *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). "Indeed, '[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *Id.* (quoting *Monroe v. Pape*, 365 U.S. 167, 187 (1961)). Hence, Sheriff Glanz can only be liable if Trevillion's harm was proximately caused by the conduct of Sheriff Glanz and his staff. *Id.* In other words, liability attaches only if Trevillion's injury "would not have occurred but for their conduct *and* if there were no unforeseeable intervening acts superseding their liability." *Id.* (emphasis added).

Based upon the record before the Court, construed in the light most favorable to Trevillion, his Eighth Amendment claim fails because he has not put forth sufficient evidence to create a triable issue of fact as to whether there was an underlying constitutional violation that caused his injury. More precisely, he has not demonstrated deliberate indifference on the part of Sergeant Black or DO Lahita because he has not shown prior knowledge on their part that he was medically required to be in a wheelchair and that removal of his wheelchair would create a substantial risk of harm to Trevillion.

It is undisputed that, on the same day Trevillion was prescribed a wheelchair by Dr. Adusei, Sergeant Black was told by Nurse Hoisington that Trevillion could walk, but also that he should be walking to improve his health. Sergeant Black testified that she relied upon this instruction in removing Trevillion's wheelchair. Trevillion has not countered with evidence that creates a dispute of fact as to Sergeant Black's reliance on this information. Nor has Trevillion put forth evidence that DO Lahita had knowledge prior to his encounter with Trevillion that he should be in a wheelchair or that he had been prescribed one by Dr. Adusei. Moreover, it is undisputed that DO Lahita was not involved in the decision to remove Trevillion's wheelchair. Instead, Trevillion argues that Sergeant Black and DO Lahita should have followed up to determine whether Trevillion was entitled to a wheelchair after making such demands. The relevant inquiry, however, is what was actually known to them, not what actions they should have taken to familiarize themselves with the pertinent facts. *See Tafoya*, 516 F.3d at 916; *Farmer*, 511 U.S. at 837. There cannot be an Eighth Amendment violation unless Sergeant Black or DO Lahita actually knew that he was medically entitled to a wheelchair and disregarded the risk that the deprivation thereof would create. Trevillion has not made such a showing. The

actions of Sergeant Black and DO Lahita may amount to negligence or even gross negligence, but cannot constitute deliberate indifference in the absence of knowledge of a substantial risk.

Even if Trevillion could show deliberate indifference, which the Court concludes he has not, there is a lack of proximate causation between the deprivation of a wheelchair and the injuries resulting from DO Lahita's leg sweep. Trevillion is correct in noting that, but for the fact that he was walking, rather than moving in a wheelchair, DO Lahita likely would not have had a reason to approach Trevillion in the hallway. Standing alone, but for causation is insufficient. *See Martinez*, 697 F.3d at 1255. Trevillion's injuries must be the natural, foreseeable consequence of having been deprived of a wheelchair. No reasonable trier of fact could find that a detention officer performing a take-down maneuver and causing Trevillion's head injuries was a foreseeable result of Trevillion having his wheelchair taken from his cell. As such, DO Lahita's leg sweep constitutes an intervening and superseding cause of the injuries sustained by Trevillion.

What happened to Jeffery Trevillion while in the custody of TCSO and Sheriff Glanz is unacceptable. The denial of a medically necessary wheelchair, no matter how temporary, should never occur; nor should displays of excessive physical violence against vulnerable inmates. Trevillion's claim for excessive force against DO Lahita, which was voluntarily dismissed, could have potentially served as an avenue for recovery for his injuries, as could other potential claims. Those theoretical claims, however, are not before the Court, which must uphold its obligation to give effect to the legal framework to which Trevillion's § 1983 Eighth Amendment claim is subject. Such a claim imposes a very high burden that must be met before liability may be imposed. That burden was not met in this case.

In light of the foregoing, Sheriff Glanz is entitled to summary judgment as to Trevillion's individual and official capacity claims against him because an underlying Eighth Amendment violation on the part of a subordinate officer has not been demonstrated. *See Martinez*, 563 F.3d at 1091.

**IT IS THEREFORE ORDERED** that defendant Stanley Glanz's Motion for Summary Judgment and Brief in Support (Doc. 77) is **granted**. A separate judgment will be entered herewith.

**IT IS FURTHER ORDERED** that defendant Glanz's Motion in Limine (Doc. 76) is **moot**.

**SO ORDERED** this 20th day of June, 2014.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE